UNITED STATES *v.* THE BEST FOODS, INC. (CORN PRODUCTS COMPANY, ASSIGNEE, SUBSTITUTED) No. 5001[1]

---

[1] C.A.D. 751.

United States Court of Customs and Patent Appeals, July 20, 1960

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section, (*Alan S. Rosenthal* and *William A. Montgomery*, trial attorneys, of counsel) for the United States.

*Sullivan & Cromwell, Davis & Gilbert, Barnes, Richardson & Colburn, Joshua Levine, Joseph Schwartz* (*John F. Dooling, Jr.*, of counsel) for appellee.

[Oral argument April 5, 1960, by Mr. Montgomery and Mr. Dooling, Jr.]

Before WORLEY, Chief Judge, and RICH, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[2]

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28, United States Code.

SMITH, Judge, delivered the opinion of the court:

 The issue we are here called upon to decide is whether the imposition by Presidential Proclamation No. 3084, March 9, 1955, T.D. 53755, of a fee of two cents per pound on an increased peanut quota of 51,000,000 pounds for the remainder of the quota year ending June 22, 1955, was valid. Appellee imported peanuts under the increased quota, paid the fee of two cents per pound in addition to the basic tariff rate of seven cents per pound and protested the added fee of two cents per pound which was exacted on entry of the peanuts it imported.

The Customs Court (C.D. 1945) sustained the protest and entered judgment for plaintiff. A rehearing was granted and a majority of the court entered the same judgment as was previously entered for plaintiff (abstract 62865), with Judge Richardson dissenting.

The Customs Court held that a decision as to whether the President has the power to proclaim both a fee and a quota was not necessary to its decision. Finding that the imposition of the fee was a new burden and not a modification of the previous proclamation No. 3019, the Customs Court held that the proclamation of a fee was illegal because the procedural requirements for imposition of a new burden were not followed.

Proclamation No. 3084 was issued pursuant to Section 22 of the Agricultural Adjustment Act, as amended. The particular provisions pertinent to the issues here are Sections 22(b) and 22(c) which read as follows:

Sec. 22(b) If, on the basis of such investigation and report to him of findings and recommendations made in connection therewith, the President finds the existence of such facts, he shall by proclamation impose such fees not in excess of 50 percentum ad valorem or such quantitative limitations on any article or articles which may be entered, or withdrawn from warehouse, for consumption as he finds and declares shown by such investigation to be necessary in order that the entry of such article or articles will not render or tend to render ineffective, or materially interfere with, any program or operation referred to in subsection (a) of this section, or reduce substantially the amount of any product processed in the United States from any such agricultural commodity or product thereof with respect to which any such program or operation is being undertaken: *Provided,* That no proclamation under this section shall impose any limitation on the total quantity of any article or articles which may be entered, or withdrawn from warehouse, for consumption which reduces such permissible total quantity to proportionately less than 50 per centum of the total quantity of such article or articles which was entered, or withdrawn from warehouse, for consumption during a representative period as determined by the President: *And provided further,* That in designating any article or articles, the President may describe them by physical qualities, value, use, or upon such other bases as he shall determine.

In any case where the Secretary of Agriculture determines and reports to the President with regard to any article or articles that a condition exists requiring emergency treatment, the President may take immediate action under this sec-

tion without awaiting the recommendations of the Tariff Commission, such action to continue in effect pending the report and recommendations of the Tariff Commission and action thereon by the President.

Sec. 22(c) The fees and limitations imposed by the President by proclamation under this section and any revocation, suspension, or modification thereof, shall become effective on such date as shall be therein specified, and such fees shall be treated for administrative purposes and for the purposes of section 612c of this title, as duties imposed by the Tariff Act of 1930, but such fees shall not be considered as duties for the purpose of granting any preferential concession under any international obligation of the United States.

Proclamation 3084 purposes to modify Proclamation No. 3019, 67 Stat. C 46, issued on June 8, 1953,[3] which was made pursuant to section 22(a) of the Agriculture Adjustment Act, and established an annual quota of 1,709,000 pounds of peanuts. Crop failures resulting from drought stimulated a Tariff Commission investigation under subsection 22(d) of the Agricultural Adjustment Act and this resulted in the issuance of Proclamation No. 3084.

Appellant urges two principal reasons why the decision below is in error and should be reversed 1) Presidential Proclamation No. 3084 is valid, and 2) appellee having benefited by the importation of peanuts under the enlarged quota provided by Presidential Proclamation No. 3084 is estopped to challenge the condition under which importation was permitted, i.e., the payment of the fee of two cents per pound in addition to the regular rate of duty.

We shall first inquire into the legality of Presidential Proclamation 3084 under section 22 of the Agricultural Adjustment Act, for, if appellant's position is asserted under an *ultra vires* proclamation, it is not seen how appellant has any standing here to assert an estoppel against one who is pursuing his statutory remedy for testing the legality of the proclamation in question.

The resolution of this issue requires us to determine 1) the scope and meaning of section 22 of the Agricultural Adjustment Act, and 2) whether Presidential Proclamation 3084 was authorized by that section.

Appellant contends 1) that Proclamation No. 3084 was issued in conformity with the requirements of section 22 of the Agricultural Adjustment Act, as amended, 7 U.S.C. 624, and 2) that Proclamation No. 3084 was within the President's authority to impose "fees * * * or * * * quantitative limitations" conferred by section 22(b) of the Agricultural Adjustment Act, as amended, 7 U.S.C. 624.

The importer contends that the proclamation is invalid because it imposes both a quota and a fee, whereas the statute allows imposition of either a quota or a fee in the alternative, but that, should it be decided that the statute does grant to the President power to proclaim

---

[3] Modifications not here pertinent were made in Proclamation 3019 by Proclamation No. 3025, 67 Stat. C 54, June 30, 1953.

both, the procedure followed in this case would not support the imposition of the fee as a new restriction.

The first issue to be decided, then, is whether the President had the power to proclaim both a fee and a quota with respect to one commodity. If the statute restricts the President to the imposition of one only in lieu of the other, it is immaterial what procedure was followed, for no procedure could expand the authority beyond that delegated by the statute.

The particular statutory language pertinent to a resolution of this issue is as follows:

Sec. 22(b) * * * he [the President] shall by proclamation impose such *fees* * * * *or* such *quantitative limitations* on any article or articles which may be entered * * * (Emphasis added.)

Sec. 22(c) The *fees and limitations* imposed by the President * * * under this section * * * (Emphasis added.)

Appellee relies upon the plain meaning of the language of the statute, pointing out that the word "or" in section 22(b) is disjunctive. Appellant argues that the word "or" should be construed in the conjunctive as "and."

The plain meaning of the statute seems to us to clearly provide alternative means for effectuating the purposes expressed i.e., controlling the import of agricultural commodities whose domestic production was subject to control under the Agricultural Adjustment Act. Unless it is shown that such a construction, adhering to the plain meaning of the words, either produces an anomaly or is contrary to the intent of Congress, that construction must prevail. *Doughten Seed Co. et al.* v. *United States*, 24 CCPA 258, T.D. 48686 (1936).

Appellant has cited a number of cases for the proposition that the word "or" when used in a statute may be construed as a conjunctive. We do not doubt that rule of construction. However, the cited cases do not require that in all statutes the word "or" is to be construed as a conjunctive. They do support the proposition that when it is necessary so to do *to carry out the legislative intent*, "or" may be construed as a conjunctive.

Such necessity for a conjunctive construction would be recognized either by an anomalous result from a disjunctive construction, or when the statute is ambiguous, and there exists evidence of such intent in the legislative history. *Doughton Seed Co.* v. *United States*, supra.

Appellant attempts to find ambiguity in section 22(b) as a result of the use of the conjunctive "and" in section 22(c) quoted above. Appellant argues that use of the word "and" means that Congress thought fees and quantitative limitations could be in the same proclamation. However, that argument ignores the context of the phrase "fees and limitations" in section 22(c), where "and" is the correct

and only apt word to express the idea that both fees and quantitative limitations must have definite effective dates. The conjunctive was necessary in section 22(c) to produce that result. The use of the conjunctive where the conjunctive meaning was intended strengthens the presumption that Congress intended the disjunctive meaning in section 22(b) where it used the disjunctive word "or."

We are not aware of any anomaly here as a result of a construction giving to the disjunctive word "or" a disjunctive meaning.

The language of section 22(b) is unambiguous and is clearly in accord with the legislative history which indicates that the disjunctive meaning of the word "or" was intended.

 In *United States* v. *Stone & Downer Co.*, 274 U.S. 244, 252, Chief Justice Taft used the following apt language to state this principle:

> \* \* \* In other words, the pole star of interpretation of statutes, whether it be of tariff acts or any other, must be the intention of Congress, when that can be clearly ascertained and is reasonably borne out by the language used.

Appellant contends that originally section 22 allowed the President to proclaim only a quota, and that in 1940 Congress granted additional power to proclaim fees in order to give the President greater flexibility in his choice of remedies to be used. This does not establish an intent to express a conjunctive meaning by use of a disjunctive term. Congress in granting greater flexibility to the President, did so by adding an alternative type of restriction.

The report by the House Committee on Agriculture (H.R. Rep. No. 1166, 76th Cong., 1st Sess. 2 (1939)) where the bill originated, adding the fee to the quantitative limitations available to the President, makes it clear that the Committee proposed to add the fee strictly as an alternative restriction. The purpose of the fee was to meet situations where a quantitative limitation would be difficult or impossible to administer.[4] The Senate Committee on Finance echoed the language of the House Committee report in its report (S. Rep. No. 1043, 76th Cong., 1st Sess. 2 (1939)).[5]

---

[4] The Bill was reported on by the House Committee on Agriculture in this language:
Another shortcoming of section 22 is that it provides only for quotas on imports, whereas all those who have dealt with the problem of foreign importations recognize that under certain circumstances import quotas are not administratively practical and are not well adapted to the circumstances. In some cases the establishment of a quota would either cause exporters from a particular country to rush shipments to come within the quota, thus creating chaotic trade conditions, or, in the alternative, impose on the exporting country the burden of allocating the applicable quota to exporters. Under such circumstances an importation fee may meet the requirements fully and practically. To meet this problem the bill amends section 22 so as to permit the President, upon the recommendation of the United States Tariff Commission, to impose *either* an importation fee *or* an importation quota, *whichever* under the circumstances is determined to be better adapted for the protection of any particular farm program. (H.R. Rep. No. 1166, 76th Cong., 1st Sess. 2, 1939.) [Emphasis added.]

[5] The Bill did not pass the Senate until January 25, 1940, but on August 5, 1939, Senator Pat Harrison put in the Congressional Record a letter from the Secretary of

We have no doubt that Congress intended by the language used to limit the discretion allowed to those who must administer the price support and trade agreement laws. Congress clearly intended, it seems to us, to establish a system which, while it would protect the agricultural commodities price support programs, would at the same time permit some executive discretion in connection with the objectives of the trade agreement program. Thus it is clear that Congress intended to enact a law giving the President alternative courses of action either of which would be sufficient to protect the programs of the Department of Agriculture under the Agricultural Adjustment Act. The effect of section 22(b) is, however, to deny the President the power to combine the various types of restrictions as was done here.

■ We find, therefore, neither ambiguity in the language nor uncertainty in the legislative intent requiring the construction of section 22 of the Agricultural Adjustment Act as urged by appellant. The available legislative history supports the clear wording of section 22(b) and indicates beyond doubt that Congress intended the alternative construction used. We find, therefore, no basis for construing the disjunctive "or" in this statute as the conjunctive "and."

Appellant suggests that proclamation No. 3084 does not impose both a fee and a quota. However, the fact that the proclamation purports to create both a quota and a fee previously nonexistent with respect to peanuts, leaves that argument without substance, and no further discussion of it is necessary.

The Government's argument that appellee is estopped to challenge the validity of the two-cent fee is based primarily upon the contention that the fee is not severable from the quota and, therefore, the fee and quota either stand or fall together. Since the import quota of peanuts provided by Proclamation No. 3019 had been filled before appellee imported the instant shipment of peanuts, the Government argues that the appellee benefited from the proclamation, and, having done so, cannot now complain of the burdens.

---

Agriculture, which explained H.R. 7171 and urged its passage. The pertinent portion of this letter is:

(3) H.R. 7171 would make it possible to restrict imports by the imposition of duties as well as quotas. This amendment to section 22 is highly desirable because in certain cases quotas are not a practical means of controlling imports. It is often difficult to arrive at a satisfactory method of allocating a quota among various countries, yet such allocation is necessary in order to prevent a chaotic situation in which each country would be obliged to rush shipments to the United States in order to utilize a maximum part of the total quota available for all countries. Moreover, the imposition of a quota on the imports from any one country places a burden upon that country of allocating its quota among its individual producers and exporters. Such a task often proves burdensome because of the difficulty of developing an equitable and satisfactory method of allocation among many different categories of producers. Consequently, the amendment contained in H.R. 7171 which would permit the imposition of *either* an import fee *or* an import quota, *whichever* was found to be best adapted to the particular purpose, would constitute a highly desirable improvement. (84th Cong. Rec. 11162 (1939).) [Emphasis added.]

 Essentially, this argument is based on the familiar rule that a party will not be heard to challenge the constitutionality of a statute under which the party has accepted the benefits conferred under that statute.[6]

The cases cited by appellant in which an estoppel is invoked in cases involving the constitutionality of a statute are not in point. We are dealing here with the single issue of the legality of an executive act purported to have been carried out under statutory authority, the constitutionality of which has not been challenged.

 We know of no case where the rule of estoppel urged by the Government has been applied in customs law. Neither are we aware of any situation where such a rule has been applied to prevent an examination on the merits of a challenge to the legality of an administrative act with respect to legislation under which the administrative official claimed to be acting.

 In applying the doctrine of estoppel, the courts of equity have insisted that one who asserts an estoppel must show that he has changed his position to his detriment in good faith reliance upon a position taken or a representation made by the other party. Here, the position of appellant was not changed to its detriment by any representation of appellee. In addition, one may not invoke the equitable doctrine of estoppel if the other party has been forced into the position on which the estoppel is based, by an illegal or *ultra vires* act of the one who asserts the estoppel.

We hold, therefore, that there is no basis here for invoking the doctrine of equitable estoppel.

We think the fee and quota are severable and, therefore, that there is no inconsistency between importer's action in importing the peanuts under the quota as enlarged by the proclamation and its challenge of the fee.

Nevertheless, appellant argues that equitable considerations of fairness and justice require us to apply an estoppel against the importer here. Assuming that the quota and the fee are not severable, it is appellant's position that when the importer challenges the fee, it challenges the proclamation as a whole from which it has enjoyed a benefit. The benefit which importer has enjoyed, according to the Government, is the right to import the peanuts, which allegedly was derived solely

[6] In this connection, we agree with the opinion of the majority of the court below on rehearing that:

Here, the action of the President is clearly not within the constitutional grant of powers to the Executive. The Constitution expressly confers on Congress all authority with respect to the regulation of foreign commerce. When Congress, acting constitutionally, has granted to the executive branch of Government certain specified and limited powers to act with respect to what Congress alone has authority to do, the constitutional issue does not arise in connection with subsequent Executive action under the statute. What does arise, is the question whether the Executive action is defective in any respect as not falling within the statutory grant.

from the proclamation. Fundamental to this argument is the contention that the importer voluntarily submitted to the tax and now, having enjoyed the quota increase, challenges the tax.

It has long been the rule that where commercial necessity commands action which can be carried out only by submission to governmental burdens on peril of criminal penalties, the incidents of voluntary action necessary for an estoppel are absent. *Maxwell* v. *Griswold*, 51 U.S. 241; *Swift Company* v. *United States*, 111 U.S. 22; *Robertson* v. *Frank Brothers*, 132 U.S. 17; *Union Pacific R.R. Co.* v. *Public Service Commission*, 248 U.S. 67.[7]

We do not recognize the manifold problems inherent in and peculiar to the task of "expounding" a constitution as justification for the expansion of the doctrine of estoppel to issues such as those raised here.

We know of no doctrine of equity, nor has any been cited to us under which we should deny the importer a hearing and determination of the merits of its contention. In fact, it seems to us to have been the clear intent of Congress, as set forth in section 514 of the Tariff Act of 1930, that in such a case as the present, the importer shall have a judicial determination of his rights.

Section 22(c) of the Agricultural Adjustment Act, as amended, provides that fees imposed by Presidential Proclamation under section 22 shall be treated for administrative purposes "as duties" imposed by the Tariff Act of 1930. If a fee is illegally imposed, then section 514 of the Tariff Act makes it a protestable exaction to be processed like any other illegal or erroneous exaction made by the Collector at the time of entry or upon liquidation and reliquidation. Under section 520 of the Tariff Act, it is refundable if it has been illegally exacted.

Thus, the present case is not different in principle from any other case of illegality or error which comes before this court for review.

Appellant's argument that the very act of import precludes challenging the legality of a fee invalidly exacted upon the import ignores the critical and controlling provision of section 22(c) of the Agricultural Adjustment Act which requires that sections 514 and 520 be applied just as in the case of any other illegal exaction made at the time of entry and properly protested. There are no limitations in section 514 as to the particular exactions which may be protested and judicially determined, notwithstanding that import had taken place.

Holding as we do that the President does not have power under section 22(b) to impose both a fee and a quota, it is immaterial to this decision what procedure was followed and whether Proclamation No. 3084 was or was not a "modification" of Proclamation No. 3019. The

---

[7] Government counsel here argue that this case is distinguishable on the facts because importer would suffer no "dire consequences" if it had refrained from entering the peanuts. However, there is no evidence from the opinion of the Supreme Court that "dire consequences" would have resulted if the railroad company had refrained from issuing its bonds.

issues relating to these matters and to the adequacy of notice of the investigation given by the Tariff Commission thus become moot issues upon which we here express no opinion.

For the reasons stated above, we hold that Proclamation No. 3084 is invalid, insofar as it imposes a fee; that there is no basis for applying an estoppel which would deny appellee the relief sought; and that the judgment of the Customs Court is *affirmed*.

MARTIN, J., was not present at the hearing and did not participate in the decision.